JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| KIWIJET, INC., | Case No. 2:22-cv-01850-FLA (RAOx) |
| --- | --- |
| Plaintiff, | **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [DKT. 40]** |
| v. | |
| DELPHIC AIRWAYS CARGO TRANSPORTATION PC, *et al.*, | |
| Defendants. | |

## **RULING**

Before the court is Plaintiff Kiwijet, Inc.'s ("Plaintiff" or "Kiwijet") Motion for Default Judgment ("Motion"). Dkt. 40 ("Mot."). On July 10, 2023, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for July 14, 2023. Dkt. 42; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15.

For the reasons stated herein, the court GRANTS the Motion in part and ENTERS default Judgment in Plaintiff's favor in the amount of $4.14 million. Plaintiff's requests for prejudgment interest and costs are DENIED without prejudice.

/ / /

/ / /

# BACKGROUND

## A. Procedural History

On March 21, 2022, Plaintiff filed the Complaint in this action, asserting four causes of action against Defendants Delphic Airways Cargo Transportation PC ("Delphic Transportation") and Delphic Airways PC ("Delphic Airways") (collectively, "Defendants") for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of California Business and Professions Code § 17200 (the California Unfair Competition Law, "UCL"); and (4) common counts.  Dkt. 1 ("Compl.").  The court entered Defendants' defaults on April 27, 2023.  Dkts. 36, 37.

## B. Plaintiff's Allegations

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (citation and quotation marks omitted).  Thus, for purposes of the subject Motion, the court takes as true the following facts pleaded in the Complaint and accompanying Exhibit:

On or around January 19, 2022, Plaintiff entered into an agreement with Defendants (the "Charter Agreement"), for the lease of an Airbus A330 200 P2F airplane (the "Aircraft").  Compl. ¶ 1, Ex. A (Charter Agreement).  Plaintiff agreed to lease the Aircraft to Defendants for a minimum of 300 hours of block flight time per month, in exchange for payment at a monthly "Aircraft, Crew, Maintenance and Insurance" ("AMCI") rate of $4,650.  *Id.* ¶ 11, Ex. A (Charter Agreement) at 9, 24.[1]  Defendants agreed to make a deposit payment of $1,395,000 within ten days of the execution of the agreement.  *Id.* ¶ 13, Ex. A (Charter Agreement) at 24.  The deposit payment represented one month usage deposit to be held until the termination of the

---

[1] The court cites documents by the page numbers added by the court's CM/ECF System, rather than any page numbers listed natively.

2

lease, and was to be refunded minus any outstanding invoices within 30 days of the last flight. *Id.*, Ex. A (Charter Agreement) at 24. According to Plaintiff, Defendants breached the Charter Agreement by failing to make the deposit required or any other payment on the Charter Agreement. *Id.* ¶¶ 14–15. Plaintiff now moves for default judgment in the principal amount of $11,628,000, prejudgment interest of $1,414,474.52, and costs of $402. Mot. at 5.

## DISCUSSION

### I. Procedural Requirements

In this district, an application for a default judgment must be accompanied by a declaration in compliance with Fed. R. Civ. P. 55(b)(1) and (2), and include the following:

(a) When and against what party the default was entered;

(b) The identification of the pleading to which default was entered;

(c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative;

(d) That the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and

(e) That notice has been served on the defaulting party, if required by [Fed. R. Civ. P.] 55(b)(2).

Local Rule 55-1.

Plaintiff, through counsel, attests default was entered against Defendants on the operative Complaint on April 27, 2023, by a clerk of the court. Mot. at 13 (Bensamochan Decl. ¶¶ 4–5). As Defendants have not appeared in this action, Plaintiff was excused from serving Defendants with written notice of the Motion for Default Judgment. *See* Fed. R. Civ. P. 55(b)(2) ("If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing."). Regardless, Plaintiff filed proof of service of the Motion as an

attachment. Dkt. 40-1. Accordingly, the court finds Plaintiff has met the procedural requirements of Local Rule 55-1.[2]

## II.  Default Judgment Legal Standard

The court clerk is generally authorized to enter a default judgment at a plaintiff's request against a defendant without a court hearing or judicial action if the claim is for "a sum certain or a sum that can be made certain by computation[.]" Fed. R. Civ. P. 55(b)(1) ("Rule 55"). In all other cases, the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2).

Rule 55 gives the court considerable discretion as to what it may require as a prerequisite to the entry of a default judgment. *TeleVideo*, 826 F.2d at 917. "The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2) (paragraph breaks omitted). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *TeleVideo*, 826 F.2d at 917–18 (citation and quotation marks omitted). However, facts which are not established by the pleadings or claims which are not well-pleaded cannot support a default judgment. *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1988).

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute

---

[2] Plaintiff did not discuss whether Defendants are minors or incompetent persons, or whether the Servicemembers Civil Relief Act applies, as required by Local Rule 55-1(c) and (d). *See* Mot. at 12–13. Nevertheless, as Defendants are foreign corporate entities, the court excuses Plaintiff from these procedural requirements.

4

concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### III.  Analysis of *Eitel* Factors

#### A.  Possibility of Prejudice to Plaintiff

First, Plaintiff contends it would be prejudiced if the Motion were denied. Mot. at 7. The court agrees. Taking the factual allegations of the Complaint as true, Defendants negotiated, entered into, and breached the Charter Agreement with Plaintiff. Absent entry of default judgment, Plaintiff will be without legal recourse to enforce its rights under the parties' agreement. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Thus, the first *Eitel* factor favors entry of default judgment.

#### B.  Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third *Eitel* factors are: (2) the merits of Plaintiff's substantive claim, and (3) the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471–72. The Ninth Circuit has suggested that these two factors require a plaintiff to "state a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). As stated, on a motion for default judgment, the factual allegations of the complaint are taken generally as true, except those relating to the amount of damages. *TeleVideo*, 826 F.2d at 917–18. Facts which are not established by the pleadings or claims which are not well-pleaded cannot support a default judgment. *Alan Neuman*, 862 F.2d at 1393. Thus, before granting judgment for Plaintiff, the court must evaluate whether the allegations stated in the Complaint establish sufficiently the merits of Plaintiff's claims. *See Danning*, 572 F.2d at 1388. As Plaintiff discusses only the first cause of action for breach of contract in the Motion, the court will similarly limit its analysis to this claim.

/ / /

5

Based on the evidence presented and taking the facts pleaded as true, the court finds Plaintiff establishes its breach of contract claim. "The elements of a breach of contract claim are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). The Charter Agreement bears the signature of Christos Lykomitros, as the Managing Director of Delphic Transportation. Compl. Ex. A (Charter Agreement) at 23. The agreement also states Delphic Transportation is a wholly owned company of Delphic Airways. *Id.* at 8. This is sufficient to establish the existence of a valid contract between the parties.

The Complaint alleges Defendants failed to make the required deposit payment of $1,395,000, or any other payment thereafter, whereas Plaintiff has performed or tendered performance of all conditions, covenants, and promises to be performed under the Charter Agreement, except those covenants that were either waived or that Plaintiff was prevented from performing through no fault of Plaintiff. Compl. ¶¶ 14–15, 18. These allegations are sufficient to state the second and third elements of a breach of contract claim. *Oasis W.*, 51 Cal. 4th at 821. Finally, Plaintiff presents evidence it suffered damages based on Defendants' breach, as discussed further below. Mot. at 14. The second and third *Eitel* factors favor entry of default judgment.

### C. Sum of Money at Stake

Fourth, the court considers "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176*; see also Eitel*, 782 F.2d at 1471–72. Plaintiff's recoverable damages, as discussed below, are proportionate to the harm caused by Defendants' conduct. This factor favors entry of default judgment.

### D. Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor "examines the likelihood of dispute between the parties regarding the material facts surrounding the case." *Wecosign, Inc. v. IFG Holdings,*

*Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) (quotation marks omitted). "Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote." *Id.* Based on the evidence presented and facts alleged, the court finds the possibility of a dispute concerning material facts is low. This factor also favors entry of default judgment.

### E. Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Nevertheless, this factor is not dispositive. *See Kloepping v. Fireman's Fund*, No. 3:94-cv-02684-TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996) ("The very fact that [Rule] 55(b) exists shows that this preference, standing alone, is not dispositive."). Defendants' failure to defend this action makes it impractical, if not impossible, for the court to consider Defendants' potential arguments and defenses before reaching a decision on the merits of Plaintiff's claims. Accordingly, while the final *Eitel* factor generally weighs against granting default judgment, the court finds this factor to be neutral here.

### F. Conclusion on *Eitel* Factors

In sum, the *Eitel* factors favor entry of default judgment in Plaintiff's favor and against Defendants. *See Eitel*, 782 F.2d at 1471–72. The court turns now to the question of Plaintiff's entitlement to the relief requested.

## IV. Award

### A. Principal Damages

Plaintiff seeks principal damages of $11,628,000, prejudgment interest of $1,414,474.52, and costs of $402. Mot. at 5. Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." The Complaint alleges Plaintiff's "anticipated profit if Defendant[s] had performed exceed[ed] Five Million Dollars ($5,000,000) over the one-year term of the Agreement." Compl. ¶ 16. As Plaintiff identified only that $5 million was at issue in the Complaint, Plaintiff's maximum principal damages recoverable on the

7

subject Motion is $5 million.

Under the Charter Agreement, the "Price" to be paid by Defendants was defined as: "(i) The Guaranteed Hours at such rate per Block hour as agreed [¶] (ii) Any additional block hours flown in excess of the Guaranteed Hours, at such rate per Block hour as agreed in each Annex [¶] [and] (iii) Such other price components as may be set forth in the Annex[.]" Compl., Ex. A (Charter Agreement) at 10. The Annex provided for an initial term of twelve months, with "Minimum Guarantee monthly block hours of 300 per month." *Id.* at 24.[3] Defendants, thus, agreed to pay for a minimum of 3,600 block hours under the agreement.

The Annex additionally identifies the ACMI rate as $4,650, for each block hour. *Id.* Plaintiff's President and CEO, Nicholas Steele ("Steele"), attests Plaintiff contracted with Jordan Aviation to provide these services at an hourly rate of $3,500. Mot. at 14 (Steele Decl.) ¶ 3. Accordingly, Plaintiff's anticipated profit for each block hour was $1,150. Multiplying 3,600 block hours by $1,150 comes to $4.14 million in principal damages.

Plaintiff contends it is entitled to two additional items of anticipated profits. First, Plaintiff argues the monthly cost paid by Plaintiff for its crew was $18,000, and that it charged Defendants $48,000 per month for this expense, resulting in an anticipated monthly net profit of $30,000 in crew charges. Mot. at 10. Plaintiff, thus, requests an additional $360,000 for lost profits based on this item. Plaintiff's crew, however, would appear to fall within the scope of the AMCI rate pursuant to the terms of the Charter Agreement. *See* Compl., Ex. A (Charter Agreement) at 9 (defining "ACMI" to mean "Aircraft, **Crew**, Maintenance and Insurance") (emphasis added), 11 ("Lessor shall make the Aircraft available to Lessee on a wet lease basis (being

---

[3] Section 14(b) of the Charter Agreement states: "Block hours are based on a ratio of block hours per cycle ('Cycle Ration') as agreed upon in each Annex; if a lower ratio is achieved during any period, then Lessee will pay for block hours as agreed in Annex 1." Compl., Ex. A (Charter Agreement) at 21.

8

aircraft, **crew**, maintenance and insurance as provided herein – commonly called 'ACMI')[.]") (emphasis added). Plaintiff does not identify any provisions of the Charter Agreement that would have allowed it to charge Defendants for crew separately from the ACMI rate. *See* Mot. at 10. The court, therefore, finds Plaintiff fails to establish it is entitled to this item of damages requested.

Second, Plaintiff contends "Kiwijet was to arrange for the aircraft to be fueled and charged a markup of $1 per gallon for the service." Mot. at 10. Plaintiff further states fuel burn data for the Aircraft reflects total fuel consumption of 1,980 gallons per hour, inclusive of taxing and auxiliary power systems, and calculates the Aircraft would have consumed 7,128,000 gallons over the contract term, for an additional $7.128 million in anticipated profits. *Id.*

Section 14(g) of the Charter Agreement states:

> Lessee reserves the right to select all handling, parking, fuel, and any other vendors the Lessee selects and will pay for these services directly with no assumption of credit from Lessor for these services. With written notification of these vendor selections, the Lessor will at all times use these Lessee selections without further notification.

Compl., Ex. A (Charter Agreement) at 21 (underline added, errors in original). Plaintiff does not identify any provisions of the Charter Agreement or other agreement between the parties that would have authorized it to charge a markup or service fee to fuel the Aircraft. *See* Mot. at 10. To the contrary, fueling the Aircraft would appear to be included within the definitions of "Price" and "ACMI" under the Charter Agreement. *See* Compl., Ex. A (Charter Agreement) at 9–10. Plaintiff, thus, fails to establish it is entitled to this additional item of anticipated profits.

In sum, the court finds Plaintiff establishes principal damages in the total amount of $4.14 million.

**B.     Prejudgment Interest and Costs**

Plaintiff requests prejudgment interest at an annual rate of 10%, from March 1, 2022, through May 10, 2023, plus $3,185.75 for each day thereafter until entry of

9

judgment by the court. Mot. at 2 (citing Cal. Civ. Code §§ 3287(a) and 3289(b)). Plaintiff did not identify the basis for its request for prejudgment interest in the Complaint, or cite California Civil Code §§ 3287(a) or 3289(b), and does not offer any argument or legal authority for why the court should award prejudgment interest pursuant to these state law statutes. *See Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 836 (9th Cir. 2012) (recognizing "the measure of interest rates prescribed for post-judgment interest in 28 U.S.C. § 1961(a) is also appropriate for fixing the rate for pre-judgment interest" in federal court). The court, therefore, DENIES without prejudice Plaintiff's request for prejudgment interest.

Finally, Plaintiff requests costs in the amount of $402. Mot. at 2, 5. Plaintiff does not identify the basis for this request or explain what these costs represent. *See* Mot. The court, therefore, DENIES without prejudice Plaintiff's request for costs.

## **CONCLUSION**

For the foregoing reasons, the court GRANTS Plaintiff's Application and ENTERS default Judgment in Plaintiff's favor in the amount of $4.14 million. Plaintiff's requests for prejudgment interest and costs are DENIED without prejudice.

Plaintiff may file within 14 days of this Order additional evidence, including a declaration by its counsel, calculating the appropriate amount of prejudgment interest pursuant to 28 U.S.C. § 1961, based on the principal damages awarded by the court, and setting forth the grounds for its request for costs.

IT IS SO ORDERED.

Dated: March 29, 2024

FERNANDO L. AENLLE-ROCHA
United States District Judge